UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES DOCKERY,

                Plaintiff,                Civil Action No. 22-11507

v.                                         Nancy G. Edmunds
                                            United States District Judge

DAVID SZYMANSKI, *et al.*,           David R. Grand
                                            United States Magistrate Judge

                Defendants.
_____/

### REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 11, 16, 19)

This case arises out of the foreclosure of a property owned by Lyndon's, LLC ("Lyndon's"). The named plaintiff is James Dockery ("Dockery"), one of Lyndon's members, and he has filed a complaint against the following defendants related to the foreclosure: the County of Wayne and Wayne County Treasurer Eric Sabree (collectively the "County Defendants"); the City of Detroit, Jill Bryant, and Mike Duggan (collectively the "City Defendants"); the Detroit Land Bank Authority and Saskia Thompson (collectively the "Land Bank Defendants"); and two individuals – Rich Vivian and Brad Thompson ("Thompson").[1] (ECF No. 1). This case has been referred to the undersigned for all pretrial purposes. (ECF No. 26).

---

[1] Also named as defendants are David Szymanski and Warren Evans; however, neither of these individuals has appeared in this matter. For the reasons set forth herein, the court lacks subject matter jurisdiction over Dockery's claims against Szymanski and Evans. Thus, the Court **RECOMMENDS** that Dockery's complaint be dismissed as to these individuals as well.

Now pending are three separate motions to dismiss, filed by the City Defendants,[2] the County Defendants, and Thompson. (ECF Nos. 11, 16, 19). On September 9, 2022, the Court docketed two filings that appear to be Dockery's responses to one or more of the defendants' motions to dismiss. (ECF Nos. 28, 29). Thompson filed a reply brief on September 23, 2022; however, the other defendants did not file replies. On December 2, 2022, the Court held oral argument on the pending motions.

I. **RECOMMENDATION**

For the foregoing reasons, **IT IS RECOMMENDED** that the Motions to Dismiss filed by the County Defendants and Brad Thompson **(ECF Nos. 16, 19)** be **GRANTED**. **IT IS FURTHER RECOMMENDED** that the City Defendants' Motion to Dismiss **(ECF No. 11)** be **GRANTED IN PART** and **DENIED IN PART WITHOUT PREJUDICE**, as set forth herein.

II. **REPORT**

   A. **Factual Background**

Dockery commenced this action *pro se* against numerous governmental entities, government employees, and individuals regarding the property commonly known as 14700 Dexter Avenue, Detroit, Michigan (the "Dexter Property"). In his complaint, which arises out of a foreclosure and eviction occurring at the Dexter Property, Dockery refers to prior court rulings made by "a series of local judges." (ECF No. 1, PageID.8). Because these state court rulings are a matter of public record and are referenced throughout Dockery's

---

[2] Both Rich Vivian and the Land Bank Defendants concur in the City Defendants' motion. (ECF Nos. 15, 22).

complaint, a brief discussion of these rulings is warranted.[3]

It is undisputed that Lyndon's, LLC – which Dockery refers to as "my company" (*Id.*, PageID.7) – owned the Dexter Property at the time Dockery contends it was unlawfully foreclosed on. First, Dockery asserts in his complaint that "[t]he Wayne County Treasurer improperly foreclosed on property owned by my company, Lyndon, LLC . . ." (*Id.*). Second, attached to the City Defendants' motion to dismiss is a copy of the recorded quitclaim deed which shows that Lyndon's, LLC was the Dexter Property's actual owner during the salient time. (ECF No. 11-2). Dockery does not challenge this document's authenticity. Third, on August 19, 2022, Dockery's company, Lyndon's, LLC (represented by counsel), filed a complaint in this Court, Civil Action No. 22-11942 (the "Lyndon's Action"), raising essentially the same dispute about the Dexter Property that Dockery raises in this action. In the Lyndon's Action, Lyndon's alleges, "James Dockery has never possessed an interest in the Property in his individual capacity." (Lyndon's Action, ECF No. 1, PageID.12). Finally, during the December 2, 2022, oral argument, Dockery admitted that the Dexter Property was owned by Lyndon's LLC.

Dockery claims the Dexter Property was purchased "with all taxes due and owing paid," but that later the "[C]ity of Detroit issued a tax notice for property tax due before [Lyndon's] actually owned the property … and foreclosed on [the Property] in [] less than one year." (ECF No. 1, PageID.8). On March 28, 2014, the Wayne County Treasurer

---

[3] In considering Rule 12(b)(1) motions, which are at issue here, the Court may consider evidence outside the pleadings to resolve factual disputes concerning the existence of subject matter jurisdiction. *See Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003).

obtained an Uncontested Judgment of Foreclosure as to the Dexter Property.[4] (ECF No. 11-3). When Lyndon's, LLC failed to redeem the foreclosed property by paying all forfeited delinquent taxes, interest, penalties, and fees by March 31, 2014, title vested in the Wayne County Treasurer. *See* MCL 211.78, *et seq.*

On January 7, 2015, the Wayne County Treasurer transferred title of the Dexter Property to the City of Detroit via a quitclaim deed for the "consideration of $0.00" pursuant to MCL 211.78m(6), which requires the Treasurer to deed all properties unsold at public auction to the local governmental unit at no cost. (ECF No. 11-4). Wayne County Circuit Court Judge Robert Columbo quieted title as to the Dexter Property to the City of Detroit on January 22, 2018. (ECF No. 11-5). Lyndon's, LLC's appeal of the judgment quieting title was dismissed by the Michigan Court of Appeals in October 2018 for want of prosecution.[5] (ECF No. 11-6).

The City of Detroit first began the process of evicting Lyndon's, LLC – and any other occupants, including Dockery – from the Dexter Property in June 2017. (ECF No. 11-10). A judgment of possession was first entered in favor of the City of Detroit on February 20, 2019. (ECF No. 11-11). Lyndon's, LLC was able to stay the eviction proceedings by filing a motion for relief from judgment regarding the original 2014

---

[4] The Judgment was entered under the General Property Tax Act, MCL 211.78, for unpaid delinquent and forfeited 2011 (and any prior year's) property taxes, interest, penalties, and fees in the amount of $67,575.83. (ECF No. 11-3).

[5] Dockery's complaint also references an "order of 36th District judge Latonya Miller" (ECF No. 1, PageID.8), which appears to be a reference to the March 16, 2018 36th District Court order denying judgment of possession to the City of Detroit. (ECF No. 11-7). Judge Columbo peremptorily reversed that order on May 4, 2018. (ECF No. 11-8). Dockery's appeal of Judge Columbo's order was denied on November 13, 2018. (ECF No. 11-9).

Judgment of Foreclosure.

On January 19, 2021, Wayne County Circuit Court Judge Timothy Kenny denied all of the claims brought by Dockery and/or Lyndon's, LLC with respect to the judgment of foreclosure. (ECF No. 11-12). The Court specifically held that Wayne County had provided all statutory and constitutional notice required; had provided Dockery and Lyndon's, LLC with all required due process; and there was no "conspiracy" between the City of Detroit and Wayne County to "steal" the Dexter Property, as alleged. (*Id.*). The Court further ruled that the transfer of the Dexter Property by Wayne County to the City of Detroit for zero dollars "was consistent with the requirements of [state law]." (*Id.*, PageID.83). The Michigan Court of Appeals denied Dockery's appeal on February 23, 2021. (ECF No. 11-13).

On March 30, 2021, a Judgment of Possession was again entered in favor of the City of Detroit. (ECF No. 11-14). On April 22, 2022, an order of eviction was issued by the 36th District Court. (ECF No. 11-15). The City then began evicting Lyndon's, LLC and any other occupants from the Dexter Property.

Upon entering the Dexter Property on April 27, 2022, it was discovered that Lyndon's, LLC and/or Dockery had been using the building to store large amounts of personal items without permission from the City and without paying rent of any kind. The City claims that it "incurred considerable expenses" in paying a bailiff to begin removing items from the Dexter Property. (ECF No. 11, PageID.50).

Lyndon's, LLC, through counsel, then filed an emergency motion in the 36th District Court to stay the eviction, which was temporarily granted on April 28, 2022, pending a

5

hearing. (ECF No. 11-16). At the May 27, 2022, hearing in 36th District Court, the City of Detroit advised the court that Lyndon's, LLC and Dockery continued to trespass on the Dexter Property and maintain a substantial amount of personal property there, including scrapped vehicles, boats, car parts, vendor appliances, clothing, and decommissioned firetrucks. (ECF No. 11-17). Lyndon's, LLC, represented by counsel, offered no defense to the eviction. The same day, the 36th District Court entered an order commanding that Lyndon's, LLC "restore the [City of Detroit] to, and put the [City] in, full possession of the premises." (ECF No. 11-18). The court further ordered that the eviction would begin on June 13, 2022, and that "[a]ny property remaining at the 14700 Dexter property on June 13, 2022, shall be deemed abandoned." (*Id.*).

Dockery also makes certain allegations about a property adjacent to the Dexter Property, which the Court will refer to as the "Adjacent Property." Specifically, Dockery alleges that, at some point, "Ms. Jill Bryant in her capacity as Manager of the Detroit Building Authority directed workers to padlock property rented by Mr. Dockery adjacent to the disputed building [i.e., the Dexter Property] preventing access to the [Adjacent P]roperty and [his] belongings." (ECF No. 1, PageID.7; *see also id.*, PageID.9 (alleging that Jill Bryant "oversaw the illegal raid and the padlocking of [his] property.")). Thus, Dockery's claims regarding the Adjacent Property are directed at Bryant.

Dockery has now filed this action in federal court, alleging that the state court rulings discussed above were a result of Wayne County "turn[ing] to a series of local judges to confer title of the [Dexter P]roperty to the city …." (*Id.*, PageID.8). He further alleges that the "Wayne County Treasurer improperly foreclosed on property owned by [his]

6

company, Lyndon, LLC [sic] for taxes it represented that was owed by myself, Mr. Dockery" and that the Dexter Property was then wrongfully "given to the City of Detroit for $0 dollars." (*Id.*, PageID.7). Dockery brings assorted constitutional claims against various individuals and entities, seeking in excess of "$3M in actual costs and $50M in punitive damages for physical and emotional distress." (*Id.*, PageID.8-9).

### B. Standard of Review

The defendants now move for dismissal of Dockery's complaint pursuant to Fed. R. Civ. P. 12(b)(1), arguing that he lacks standing to bring the claims asserted therein,[6] which is a question of subject matter jurisdiction. *See Stewart as next friend of M.S. v. Manchester Cmty. Sch.*, No. 21-12392, 2022 WL 4385346, at *1 (E.D. Mich. Sept. 21, 2022). "Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack questions the sufficiency of the pleadings, taking all allegations in the complaint as true. *Id.* Conversely, in a factual attack, there is no presumptive truthfulness, and the court must weigh conflicting evidence to determine whether subject matter jurisdiction exists. *Id.* Under Rule 12(b)(1), the plaintiff bears the burden of proving jurisdiction in order to survive the motion. *See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

---

[6] Although the defendants make several other arguments in their respective motions to dismiss, the Court declines to consider them, as the reasons set forth herein clearly justify dismissal of virtually all of Dockery's claims. The only exception to this pertains to Dockery's Fourth Amendment claim against Jill Bryant with respect to the Adjacent Property, which is addressed *infra* at 10-12.

7

### C. Analysis

#### 1. *The Dexter Property*

As set forth above, the defendants argue that dismissal is appropriate because Dockery lacks standing to bring claims related to the Dexter Property. Standing is the threshold requirement for invoking federal court jurisdiction. *See Binno v. American Bar Ass'n*, 826 F.3d 338, 344 (6th Cir. 2016). In order to have standing to bring a claim, a plaintiff must have the following: (1) an injury in fact, which is concrete and particularized; (2) the injury must be fairly traceable to the challenged action of the defendants; and (3) the injury must be more than speculative, such that it is likely to be redressed by a favorable decision. *See Williams v. City of Detroit*, No. 16-14112, 2019 WL 2410719, at *3 (E.D. Mich. June 7, 2019). To be a "particularized" injury, the injury "must affect the plaintiff in a personal and individual way." *Weiser v. Benson*, 48 F.4th 617, 623 (6th Cir. 2022) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-40 (2016)).

Moreover, as explained recently in *Olita v. McCalla*, No. 2:21-cv-2763, 2022 WL 1644627, at *5 (W.D. Tenn. May 24, 2022):

> . . . prudential standing adds another gloss to the standing analysis, particularly where, as here, a party is seeking to rely on harm to another to create standing for himself. That is because one aspect of the prudential standing doctrine is that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth [v. Seldin]*, 422 U.S. [490, 499 (1975)]. In the context of business entities that have a separate legal identity (such as a corporation or an LLC), the prohibition on third-party standing typically in turn means that a business's owners cannot seek to enforce the business's rights. *See generally, e.g., Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336–37 (1990); *In re AFY, Inc.*, 902 F.3d 884, 890 (8th Cir. 2018) ("Because a corporation is an entity separate and distinct from

8

its shareholders, a *shareholder* does not have standing to assert a claim for harm suffered by the corporation."). In other words, "[c]onduct which harms a corporation confers standing on the corporation, not its shareholders." *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010). That same rule applies to an LLC and its members. *See Vaughn v. Taylor*, No. 2:21-CV-61, 2021 WL 6428005, at *4 (E.D. Tenn. June 15, 2021) ("As with corporations, members of LLCs generally do not have standing to bring individual claims for harms to the LLC itself."); *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 119 (4th Cir. 2004). The only exception to this owners-can't-sue-based-on-harm-to-the-entity principle is "where the shareholder suffers an injury separate and distinct from that suffered by other shareholders, or the corporation as an entity." *Quarles v. City of E. Cleveland*, No. 99-3050, 1999 WL 1336112, at *3 (6th Cir. 1999) (per curiam).

In this case, Dockery alleges that the Dexter Property, which was owned by Lyndon's, LLC, was subject to wrongful foreclosure, resulting in constitutional violations. More specifically, Dockery claims that the Wayne County Treasurer "improperly foreclosed on property **owned by my company, Lyndon, LLC**" and that "the county should pay for conspiring with the city to take my property without due process …." (ECF No. 1, PageID.7, 8) (emphasis added). But, taking Dockery's allegations as true, he lacks standing to assert such claims.

There is no dispute that during the relevant time Dockery did not own, or have a direct possessory interest in, the Dexter Property. Lyndon's, LLC – which did own the Dexter Property at the time of the foreclosure – is a distinct legal entity that exists separate and apart from Dockery, its member/owner. Thus, as explained above, Dockery has no standing to assert a claim that the defendants wrongfully foreclosed on the Dexter Property. *See Olita*, 2022 WL 1644627, at *5. *See also Taitt v. Crossley*, No. 14-11826, 2014 WL 6986338, at *1 (E.D. Mich. Dec. 10, 2014) ("plaintiff, a non-attorney member of the LLC

9

… has no standing to object to liens assessed against the LLC…. Plaintiff [LLC member] may not challenge these tax liens. Only the LLC itself may do so and only by counsel."). Because Dockery lacks standing to bring claims on behalf of Lyndon's, LLC, the Court lacks subject matter jurisdiction over all of the claims he asserts in this case related to the Dexter Property, and the defendants' motions to dismiss should be granted to the extent they address such claims. *See Binno*, 826 F.3d at 344.[7]

## 2. *The Adjacent Property*

As set forth above, *supra* at 6, Dockery alleges that Jill Bryant violated his Fourth Amendment rights when, at some unspecified time, she "directed workers to padlock" the Adjacent Property, preventing Dockery from accessing that property or the belongings he allegedly was storing therein. (ECF No. 1, PageID.7). Elsewhere in his complaint, Dockery alleges that Bryant, "who personally oversaw the illegal raid and the padlocking of [the Adjacent Property] should pay [him] $100,000 for violating [his] 4th amendment rights by seizing [his] property, both in the illegal raid, and then again, in the padlocking of [his] neighbor's property." (*Id.*, PageID.9).

In their motion to dismiss, the City Defendants do not address Dockery's Fourth Amendment illegal seizure claim against Bryant related to the Adjacent Property. Indeed, the closest they come is in a footnote, where they appear to misapprehend Dockery's allegations. Specifically, the City Defendants assert:

> Since June 13, 2022, Plaintiff continues to trespass onto the [Dexter Property] without the City's permission. The City replaced the locks

---

[7] As noted above, *supra* at 3, Dockery has made crystal clear that he does not possess a direct ownership interest in the Dexter Property.

10

> on the building in order to prevent any further trespassing. *See* ECF No. 1, PageID.9 (Plaintiff's refers to this process as an "illegal raid" and "padlocking" the Dexter property). The "equipment" and "property" which Plaintiff discusses is likely in reference to the items **within the Dexter [P]roperty** which were deemed abandoned as of June 13, 2022. *See* Exhibit 16 (Order of the 36th District Court deeming "any property remaining at the 14700 Dexter property on June 13, 2022, shall be deemed abandoned.").

(ECF No. 11, PageID.51 n. 2) (emphasis added).

As set forth above, however, Dockery's allegations regarding Bryant's "illegal raid" and "padlocking" of a property refer to the *Adjacent Property*, not the Dexter Property, and the City Defendants advance no arguments as to why a Fourth Amendment claim stemming from such alleged actions should be dismissed. "The Fourth Amendment, made applicable to the States by the Fourteenth, provides in pertinent part that the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated ….'" *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 61 (1992) (internal citation omitted). "A 'seizure' of property … occurs when there is some meaningful interference with an individual's possessory interests in that property." *Id.* (internal quotation marks omitted).

At least on the present record, viewing the allegations in the complaint liberally (due to Dockery's *pro se* status, *see Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007)), and in the light most favorable to Dockery, the Court cannot find that Dockery failed to state a Fourth Amendment illegal seizure claim against Bryant. Specifically, to the extent

11

Dockery had a possessory interest in the Adjacent Property,[8] and Bryant, without a legally cognizable basis for doing so, interfered with that interest, it is conceivable that she violated Dockery's Fourth Amendment rights. Because the City Defendants have not addressed this issue head-on, however, this aspect of the City Defendants' motion to dismiss should be denied *without prejudice*, such that the City Defendants may file a renewed motion to dismiss on this issue should such a motion be appropriate.

### III.    CONCLUSION

For all of the foregoing reasons, **IT IS RECOMMENDED** that the Motions to Dismiss filed by the County Defendants and Brad Thompson **(ECF Nos. 16, 19)** be **GRANTED**. **IT IS FURTHER RECOMMENDED** that the City Defendants' Motion to Dismiss **(ECF No. 11)** be **DENIED IN PART WITHOUT PREJUDICE** as to Dockery's Fourth Amendment illegal seizure claim against Jill Bryant, and **GRANTED IN PART** in all other respects, as set forth herein.

Dated: January 24, 2023          s/David R. Grand
Ann Arbor, Michigan              DAVID R. GRAND
                                 United States Magistrate Judge

---

[8] At oral argument, the Court attempted to ascertain whether it is Dockery or Lyndon's, LLC who allegedly has a possessory interest in the Adjacent Property. At that time, Dockery indicated that he could provide the Court with a copy of a lease agreement for the Adjacent Property, which would purportedly show whether Dockery or Lyndon's, LLC (or, potentially, both) had an interest in the Adjacent Property at the relevant time. (ECF No. 37, PageID.515-20). Although the Court granted Dockery an extension of time within which to do so, Dockery did not submit any such lease agreement. Instead, he filed an affidavit, signed by Saif Algalham, who indicated that he "agreed to allow James Dockery and Lyndon's LLC to use space on [the Adjacent Property], and they have permission to store personal property on its premises." (ECF No. 41, PageID.674). Thus, it is still not entirely clear from the record whether Dockery – the named plaintiff in this case – has a possessory interest in the Adjacent Property.

**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 24, 2023.

                                                               s/Eddrey O. Butts
                                                               EDDREY O. BUTTS
                                                               Case Manager