UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES DOCKERY,

                Plaintiff,                Civil Action No. 22-11507

v.                                       Nancy G. Edmunds
                                          United States District Judge

DAVID SZYMANSKI, *et al.*,        David R. Grand
                                            United States Magistrate Judge

                Defendants.
_____/

## REPORT AND RECOMMENDATION TO DENY DEFENDANT JILL BRYANT'S RENEWED MOTION TO DISMISS (ECF No. 47)

This case arises out of the foreclosure of a property owned by Lyndon's, LLC ("Lyndon's"). The named plaintiff is James Dockery ("Dockery"), one of Lyndon's members, and he filed a complaint against numerous defendants principally related to the foreclosure of that property. (ECF No. 1). This case has been referred to the undersigned for all pretrial purposes. (ECF No. 26).

On January 24, 2023, this Court issued a Report and Recommendation ("R&R") on three motions to dismiss, filed by various groups of defendants, in which it recommended dismissal of all of Dockery's claims, with the exception of a Fourth Amendment illegal seizure claim pled against Defendant Jill Bryant ("Bryant"). (ECF No. 45). As to this claim, the Court recommended denying without prejudice Bryant's motion to dismiss. (*Id.*, PageID.765). On February 13, 2023, the Honorable Nancy G. Edmunds issued an Order accepting and adopting the R&R. (ECF No. 48).

On February 2, 2023, Bryant filed a renewed motion to dismiss, seeking dismissal of Dockery's Fourth Amendment illegal seizure claim against her. (ECF No. 47). Dockery filed a response to Bryant's motion on February 24, 2023 (ECF No. 52), and Bryant filed a reply on March 9, 2023 (ECF No. 55).

Having reviewed the pleadings and other papers on file, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

## I.   RECOMMENDATION

For the foregoing reasons, **IT IS RECOMMENDED** that Bryant's Renewed Motion to Dismiss **(ECF No. 47)** be **DENIED**.

## II.   REPORT

### A.   Factual Background

This case's factual background is set forth in detail in this Court's prior R&R (ECF No. 45) and is incorporated herein. Broadly speaking, Dockery challenges the foreclosure of the property commonly known as 14700 Dexter Avenue, Detroit, Michigan (the "Dexter Property"), which was owned by Lyndon's, LLC – an entity that Dockery refers to as "my company" in his complaint. (ECF No. 1, PageID.7). In short, the Wayne County Treasurer foreclosed on the Dexter Property in March of 2014 and transferred title of the Dexter Property to the City of Detroit, pursuant to MCL 211.78m(6), in January of 2015.

The City of Detroit first began the process of evicting Lyndon's, LLC – and any other occupants, including Dockery – from the Dexter Property in June of 2017. Through various legal maneuvers, Dockery and Lyndon's, LLC were able to avoid eviction until

April 22, 2022, when an order of eviction was issued by the 36th District Court. At that time, the City actively began evicting Lyndon's, LLC and any other occupants from the Dexter Property. In its prior R&R, the Court summarized the events that then transpired as follows:

> Upon entering the Dexter Property on April 27, 2022, it was discovered that Lyndon's, LLC and/or Dockery had been using the building to store large amounts of personal items without permission from the City and without paying rent of any kind. The City claims that it "incurred considerable expenses" in paying a bailiff to begin removing items from the Dexter Property.
>
> Lyndon's, LLC, through counsel, then filed an emergency motion in the 36th District Court to stay the eviction, which was temporarily granted on April 28, 2022, pending a hearing. At the May 27, 2022, hearing in 36th District Court, the City of Detroit advised the court that Lyndon's, LLC and Dockery continued to trespass on the Dexter Property and maintain a substantial amount of personal property there, including scrapped vehicles, boats, car parts, vendor appliances, clothing, and decommissioned firetrucks. Lyndon's, LLC, represented by counsel, offered no defense to the eviction. The same day, the 36th District Court entered an order commanding that Lyndon's, LLC "restore the [City of Detroit] to, and put the [City] in, full possession of the premises." The court further ordered that the eviction would begin on June 13, 2022, and that "[a]ny property remaining at the 14700 Dexter property on June 13, 2022, shall be deemed abandoned."

(ECF No. 45, PageID.758-59) (internal citations omitted).

At this stage of the instant litigation, all of Dockery's claims arising out of the foreclosure of the Dexter Property have been dismissed. (ECF Nos. 45, 48). However, in his complaint, Dockery also alleges that defendant Jill Bryant, who worked for the Detroit Building Authority, padlocked a property adjacent to the Dexter Property, located at 3301 Bourke Street (the "Adjacent Property") – in order to prevent him from accessing valuable

personal property she knew he was storing there, and so that it could be permanently seized. Specifically, Dockery alleges that:

> Ms. Jill Bryant in her capacity as Manager of the Detroit Building Authority directed workers to padlock property rented by Mr. Dockery adjacent to the disputed building [i.e., the Dexter Property] preventing access to the [Adjacent P]roperty and my belongings. Ms. Bryant then disputed with the owner of the [Adjacent P]roperty and offered to share a lock with him so that she could control his property and therefore, control and seize my property. Ms. Bryant … had no right to seize my property and padlock my neighbors [sic] land to keep me from the property they had no right to and no control over.

(ECF No. 1, PageID.7; *see also id.*, PageID.9 (alleging that Jill Bryant violated his Fourth Amendment rights by "seizing [his] property, both in the illegal raid, and then again, in the padlocking of [his] neighbor's property")).[1] To be clear, then, Dockery's illegal seizure claim is two-part: he alleges that Bryant committed an illegal seizure by "padlocking" the Adjacent Property – thus allegedly preventing him from accessing personal property he was storing there – and also by seizing his personal property, which was being stored on the Adjacent Property. (ECF No. 28, PageID.468).

In her renewed motion to dismiss, filed pursuant to Fed. R. Civ. P. 12(b)(6), Bryant argues that dismissal of Dockery's Fourth Amendment claim is appropriate because, although Dockery might have had permission to store personal property on the Adjacent Property, he did not have a *possessory interest* in the Adjacent Property. (ECF No. 47). Bryant further argues that, even if Dockery did have a possessory interest in the Adjacent Property, his claim is barred by qualified immunity. (*Id.*). These arguments are addressed

---

[1] According to Dockery, the padlocking of the Adjacent Property occurred on or about June 29, 2022, and the padlock was removed on or about July 2, 2022. (ECF No. 28, PageID.466-69).

4

below.

### B.     Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, a reviewing court must accept the factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent a complaint from being dismissed on grounds that it fails to

sufficiently comport with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### C. Analysis

#### 1. Dockery Has Stated a Cognizable Fourth Amendment Claim for Illegal Seizure Against Bryant

As set forth above, Dockery alleges that Bryant violated his Fourth Amendment rights when, on June 29, 2022, she "directed workers to padlock" the Adjacent Property, preventing Dockery from accessing belongings he allegedly was storing on that property. (ECF No. 1, PageID.7; *see also* ECF No. 28, PageID.468-69). Elsewhere in his complaint, Dockery alleges that Bryant, "personally oversaw the illegal raid and the padlocking of [the Adjacent Property]," and that she "should pay [him] $100,000 for violating [his] 4th amendment rights by seizing [his] property, both in the illegal raid, and then again, in the padlocking of [his] neighbor's property." (ECF No. 1, PageID.9).

"The Fourth Amendment, made applicable to the States by the Fourteenth, provides in pertinent part that the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated ….'" *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 61 (1992) (internal citation omitted). "A seizure of property … occurs when there is some meaningful interference with an individual's possessory interests in that property." *Id.* (internal quotation marks omitted). Courts have recognized

6

that if a plaintiff has no possessory interest in the property, he has no standing to challenge any searches or seizures. *See United States v. Bah*, 794 F.3d 617, 626 (6th Cir. 2015). Thus, "[t]he Fourth Amendment's standing principle is embodied in the requirement that a party claiming a Fourth Amendment violation must demonstrate that he, and not someone else, had a legitimate expectation of privacy in the area or thing searched." *Every v. Town of Littleton*, 380 F. Supp. 3d 173, 179 (D.N.H. 2019) (internal quotations omitted). In order to make such a showing, an individual must show both a subjective expectation of privacy and that society accepts that expectation as objectively reasonable. *See California v. Greenwood*, 486 U.S. 35, 39 (1988).

Recognizing that whether *Dockery* – the plaintiff in this case – had a possessory interest (and, thus, an expectation of privacy) in the Adjacent Property was a critical issue, the Court attempted to clarify this issue in considering the motions to dismiss that were the subject of its prior R&R. In response to one of the previously-filed motions to dismiss, Dockery clearly asserted that he had leased space on the Adjacent Property "due to its proximity to [the Dexter Property] to store [his] belongings on while [he] worked to retain [his] property on [the Dexter Property]." (ECF No. 28, PageID.467). According to Dockery, at the time of the alleged illegal seizure in June 2022, he specifically advised Bryant that he was "renting the land" on the Adjacent Property but that, nevertheless, Bryant padlocked that property (*i.e.*, put "chains and locks on all gates including on the [A]djacent [P]roperty"), and then seized all of his personal property that was being stored there. (*Id.*, PageID.468).

Dockery was questioned about this issue at oral argument on December 22, 2022,

7

and was specifically asked whether *he* or his company, *Lyndon's, LLC*, leased the Adjacent Property (or both, or neither). (ECF No. 37, PageID.512-20). At that time, Dockery indicated that he could provide the Court with a copy of a lease agreement for the Adjacent Property, which would purportedly show that Dockery himself (in addition to Lyndon's, LLC) had a possessory interest in the Adjacent Property at the relevant time. (*Id.*). However, Dockery did not submit any such lease agreement to the Court. Instead, he filed an affidavit, signed by Saif Algalham, who indicated that he is the owner of Sabaa Enterprises Inc. ("Sabaa"), which owns the Adjacent Property. (ECF No. 41, PageID.674). In his affidavit, Mr. Algalham avers that on April 29, 2022, he specifically advised Bryant about the "lease agreement" with Dockery:

> 4. I have agreed to allow James Dockery and Lyndon's LLC to use space on [the Adjacent Property], and they have permission to store personal property on its premises.
>
> 5. I have advised bailiff Fred Dixon during an April 27, 2022 Zoom meeting that James Dockery and Lyndon's LLC were parties to a lease agreement with Sabaa and that they had permission to store property on the [Adjacent] Property.
>
> 6. I reiterated my position to Jill Bryant in addition to other City of Detroit officials during an April 29, 2022 Zoom call.

(*Id.*).

In her renewed motion to dismiss, Bryant argues that Dockery's illegal seizure claim fails because "[i]t is clear from the record before the Court that [Dockery] does not have a legally cognizable possessory interest in the Adjacent [P]roperty and only has 'permission' to be present on the Adjacent Property." (ECF No. 47, PageID.779). According to Bryant, merely "[h]aving permission from the owner to be present [on the property] is insufficient

8

to raise a claim under the Fourth Amendment." (*Id.*, PageID.781 (citing *Rakas v. Illinois*, 439 U.S. 128, 148 (1978)). Bryant further asserts that "[a]ny right to be free from a seizure belongs to Sabaa Enterprises and Mr. Dockery does not have standing to raise a claim on their behalf." (*Id.*, PageID.782). At least at this stage of the proceedings, where the Court must accept as true Dockery's factual allegations, Bryant is not entitled to dismissal of Dockery's Fourth Amendment claim.

Dockery has sufficiently alleged that Bryant meaningfully interfered with his possessory interest when she "directed workers to padlock" the Adjacent Property, because Dockery at least arguably had a legitimate expectation of privacy in both the Adjacent Property itself and the belongings he was storing there. With respect to Dockery's possessory interests in the Adjacent Property and the personal property stored thereon, Mr. Algalham averred that Dockery was a party to a "lease agreement" with Sabaa, that Dockery had permission to store his personal items on the Adjacent Property, and that Algalham so advised defendant Bryant. (ECF No. 41, PageID.674). Taking these allegations as true, Dockery had a subjective expectation of privacy in the personal property he was storing on the Adjacent Property. Importantly, courts have specifically recognized the objective reasonableness of such an expectation of privacy, in one case going so far as to hold, "[o]ne does not lose expectations of privacy in one's personal effects merely because they are stored on another's property." *United States v. Williams*, 347 F. Supp.3d 312, 316 (E.D. Mich. 2018). *See also*, *United States v. Waller*, 426 F.3d 838, 848 (6th Cir. 2005) ("The expectation of privacy in one's luggage is not lessened by storing it on the premises of a third-party. Rather, the expectations may well be at their

9

most intense when such effects are deposited temporarily or kept semi-permanently … in places under the general control of another.") (internal quotations omitted).

In sum, if, as Dockery alleges, despite being aware that he had moved "his personal property off the Dexter Property and onto the Adjacent Property" (ECF No. 52, PageID.808), defendant Bryant directed others to seize those belongings, Dockery could establish that her actions amounted to an illegal seizure under the Fourth Amendment. Thus, dismissal of that claim pursuant to Rule 12(b)(6) is not appropriate.

*2. Bryant Has Not Established Her Entitlement to Qualified Immunity*

Bryant also argues that even if Dockery has standing to bring a Fourth Amendment illegal seizure claim, the doctrine of qualified immunity shields her from any liability. Public officials are entitled to qualified immunity, which shields them from personal liability under § 1983, unless they "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is the plaintiff's burden to show that the defendant is not entitled to qualified immunity. *See Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012). To determine whether the defendant is entitled to qualified immunity, the court must ask two questions: (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

In support of her argument that qualified immunity bars Dockery's Fourth Amendment illegal seizure claim, Bryant makes two arguments. First, she argues that

"qualified immunity is applicable because there was no clearly established right violated."[2] (ECF No. 47, PageID.783). The plaintiff bears the burden of showing that the right was clearly established, and to do so, the plaintiff "must point to a case showing that reasonable officers would have known their actions were unconstitutional under the specific circumstances encountered." *Bell v. City of Southfield, Michigan*, 37 F.4th 362, 367 (6th Cir. 2022). Here, Bryant asserts that "[t]here is no clearly established law stating that temporarily padlocking the Adjacent Property for three days would constitute a 'seizure' of property." (ECF No. 47, PageID.785). But, Dockery does not allege only that Bryant padlocked the Adjacent Property, thus depriving him of the ability to access his personal items; he also alleges that Bryant illegally seized the personal property that he was storing on the Adjacent Property. (ECF No. 28, PageID.468). There can be little dispute that, at the time of the events in question, it was clearly established that a government official cannot enter onto private property and seize an individual's personal items. *See, e.g., Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 695 (6th Cir. 2018) ("Under clearly established Fourth-Amendment law, government officials must obtain a warrant to conduct a search or seizure on private property, absent exigent circumstances or another recognized

---

[2] In support of her argument, Bryant points to language in this Court's prior R&R, asserting that, "If, as this Court noted, it is 'still not entirely clear whether Dockery has a possessory interest in the Adjacent Property,' it certainly was not clear to Ms. Bryant seven months prior that her actions could violate Mr. Dockery's constitutional rights." (ECF No. 47, PageID.783-84) (internal citation omitted). The Court is not persuaded by this argument. Indeed, much of the Court's uncertainty about the alleged violation of Dockery's Fourth Amendment rights was due to the fact that Bryant did "not address Dockery's Fourth Amendment illegal seizure claim [] related to the Adjacent Property." (ECF No. 45, PageID.763). Now that Bryant has done so, and Dockery has been afforded the chance to respond to her arguments, he has stated a viable Fourth Amendment claim for the reasons set forth above, *supra* at 6-10.

11

exception.") (internal quotations omitted); *Hensley v. Gassman*, 693 F.3d 681, 694 (6th Cir. 2012) ("This court has long recognized that individuals have 'a clearly established right not to have property in which [they] enjoy[] a lawful possessory interest seized by state action in violation of the constitution.'") (quoting *Haverstick Enters., Inc. v. Financial Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994) (footnote omitted)).  Thus, Bryant's argument that the right at issue was not clearly established is without merit.

Bryant also argues that "qualified immunity applies when the government official's purported error was based on 'a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact.'"  (ECF No. 47, PageID.786) (quoting *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015)).  Again, however, taking Dockery's allegations as true, there was no "mistake."  According to Dockery, at the time of the alleged illegal seizure in June 2022, he specifically advised Bryant that he was "renting the land" on the Adjacent Property but that, nevertheless, Bryant seized all of his personal property stored there and put her own "chains and locks on all gates …."  (ECF No. 28, PageID.468).  And, in his affidavit, Mr. Algalham confirms that he advised Bryant as early as April of 2022 that he had agreed to allow Dockery to store his personal property on the Adjacent Property and that Dockery was party "to a lease agreement with Sabaa and that [he] had permission to store property on the [Adjacent] Property."  (ECF No. 41, PageID.674).  Given the facts as alleged, which the Court must accept as true at this stage of the case, Bryant's argument that her actions were based on a reasonable mistake is without merit.  Accordingly, Bryant is not entitled to qualified immunity on Dockery's Fourth Amendment claim against her.

### III. CONCLUSION

For all of the foregoing reasons, **IT IS RECOMMENDED** that Bryant's Renewed Motion to Dismiss **(ECF No. 47)** be **DENIED**.

Dated: May 25, 2023  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

13

## CERTIFICATE OF SERVICE

  The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 25, 2023.

              s/Eddrey O. Butts
              EDDREY O. BUTTS
              Case Manager