UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES DOCKERY,

       Plaintiff,

v.

DAVID SZYMANSKI, et al.,

       Defendants.

_____/

Case No: 22-11507

Honorable Nancy G. Edmunds
Magistrate Judge David R. Grand

**OPINION AND ORDER ACCEPTING AND ADOPTING MAGISTRATE
JUDGE'S DECEMBER 19, 2025 REPORT AND RECOMMENDATION [88],
OVERRULING DEFENDANT'S OBJECTIONS [91], AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [77]**

Plaintiff James Dockery filed this action against numerous defendants related to the foreclosure of property owned by Lyndon's, LLC, of which Dockery is a member. At this time, the sole remaining defendant in this case is Jill Bryant, who works for the City of Detroit Building Authority. Dockery's remaining claims relate to allegations that Bryant padlocked a different property on which he was storing valuable equipment and other personal property, preventing him from accessing his belongings, so that the City could permanently seize them.

The matter is before the Court on Magistrate Judge David Grand's Report and Recommendation (R&R) to deny Defendant's motion for summary judgment. (ECF No. 77.) Defendant filed objections to the report and recommendation, to which Plaintiff responded (ECF No. 92) and Defendant replied (ECF No. 95). For the reasons below, the Court OVERRULES the objections and ACCEPTS AND ADOPTS the Report and Recommendation.

## I.      Background

In March of 2014, the Wayne County Treasurer foreclosed on the property commonly known as 14700 Dexter Avenue, Detroit, Michigan (Dexter Property), which was owned by Lyndon's, LLC. Title to the Dexter Property was transferred to the City of Detroit (City), pursuant to MCL 211.78m(6), in January of 2015. Lyndon's and Dockery had been using the Dexter Property to store personal items without permission from the City. On April 22, 2022, the Wayne County 36th District Court issued an order of eviction and subsequently "ordered that . . . '[a]ny property remaining at the 14700 Dexter property on June 13, 2022, shall be deemed abandoned.'" (ECF No. 45, PageID.758-59) (internal citations omitted). At this stage of the instant litigation, Dockery's claims arising out of the foreclosure of the Dexter Property have all been dismissed.

Dockery's remaining claim is his allegation that Bryant, who works for the Detroit Building Authority, padlocked 3301 Bourke Street (Bourke Property), which is located adjacent to the Dexter Property. Dockery alleges Bryant took this action to prevent him from accessing valuable personal property she knew he was storing on the Bourke Property, so such personal property could be permanently seized. Dockery's Fourth Amendment illegal seizure claim against Bryant is two-fold: (1) Bryant committed an illegal seizure by padlocking the Bourke Property –preventing him from accessing personal property he was storing there – and (2) Bryant permanently seized his personal property by directing and/or overseeing its removal. (ECF No. 28, PageID.468.)

In her motion, Bryant argues that she is entitled to summary judgment as to Dockery's padlocking claim because (1) she is entitled to qualified immunity, and (2) Dockery does not have standing to claim that any property stored on the Bourke Property was illegally seized because he had no possessory interest in the Bourke Property. (ECF No. 77, PageID.958-66.) Bryant argues she is entitled to summary judgment as to the seizure claim because (1) she did not personally cause any items to be seized; (2) she is entitled to qualified immunity regarding items that might have been taken by non-parties; and (3) Dockery has not presented proof that he owned any of the items he claims were taken. (*Id*., PageID.953, 966-71.)

After reviewing the pleadings and holding oral argument on Bryant's motion, Magistrate Judge Grand concluded that genuine issues of material fact preclude summary judgment on each of the arguments raised by Bryant. Bryant filed an objection as to each recommendation made in the Report and Recommendation.

## II.     Standard of Review

Upon receipt of a report and recommendation from the magistrate judge, a district court judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. §636(b)(1). Thereafter, the district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

The Court is not "required to articulate all of the reasons it rejects a party's objections," if it does not sustain those objections. *Thomas v. Halter*, 131 F. Supp. 2d 942, 944 (E.D. Mich. 2001) (citations omitted). The purpose of filing objections is to

focus the district judge's "attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). Thus, a party's objections must be "specific." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001) (citations omitted).

In addition, objections that merely restate arguments previously presented, do not sufficiently identify alleged errors on the part of the magistrate judge. *Senneff v. Colvin*, No. 15-cv-13667, 2017 WL 710651, at *2 (E.D. Mich. Feb. 23, 2017). An objection that does nothing more than disagree with a magistrate judge's conclusion, or simply summarizes what has been argued before, is not considered a valid objection. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991); *Watson v. Jamsen*, No. 16-cv-13770, 2017 WL 4250477, at *1 (E.D. Mich. Sept. 26, 2017).

Federal Rule of Civil Procedure 56(a) provides, "[t]he court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." There is a genuine dispute of material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Courts look to the applicable substantive law to determine materiality as "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will . . . preclude . . . summary judgment." *Id.* The moving party has an initial burden to inform the court of the portions of the record "which it believes demonstrate the absence of a genuine dispute of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the non-moving party must make a "showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322-23. To do so, the non-moving party must present enough evidence "on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Finally, the court "consider[s] all facts and inferences drawn therefrom in the light most favorable to the nonmovant." *City of Wyandotte v. Consol. Rail. Corp.*, 262 F.3d 581, 585 (6th Cir. 2001).

### III.   Analysis

#### A.   Plaintiff's Standing Relating to the Padlocking Claim (Defendant's Objection #1)

Applying Supreme Court precedent, the Sixth Circuit has repeatedly held that "[a] plaintiff must prove Article III standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Kareem v. Cuyahoga Cnty. Bd. of Elections*, 95 F.4th 1019, 1022 (6th Cir. 2024) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). While at the dismissal stage the plaintiff can rest on allegations, to avoid summary judgment he must "set forth" by affidavit or other evidence "specific facts," which will be taken to be true. *Lujan*, 504 U.S. at 561 (citing Fed. R. Civ. Proc. 56(e)). Ultimately, any controverted facts as to standing must be "supported adequately by the evidence adduced at trial." *Id*. (citation omitted).

Despite claiming to have a written lease, Dockery never produced one during discovery. Instead, Dockery relies on his testimony that he leased the Bourke Property from Sabaa Enterprises, through its owner Saif Algalham. Dockery also relies on Mr. Algalham's affidavit wherein Algalham acknowledges the lease and that he advised Bryant of the lease two months before the Bourke Property was padlocked.

The Magistrate Judge considered Bryant's argument that a lease must be in writing to be valid under Michigan's statute of frauds. However, the statute provides that only leases for more than a year must be in writing, and the Magistrate Judge noted that the record did not contain sufficient evidence to determine whether the alleged lease at issue was for a period longer than one year. Therefore, the Magistrate Judge concluded there was a genuine issue of material fact as to whether any lease between Dockery and Sabba is barred by the statute of frauds, and thus, whether Dockery has standing to pursue his Fourth Amendment claim arising out of the padlocking of the Bourke Property.

Bryant continues to argue that Dockery lacks standing to bring his Fourth Amendment padlocking claim because he has not demonstrated that he had a lawful possessory interest in the Bourke Property. Bryant characterizes Mr. Algalham's affidavit as averring that he merely gave Dockery "permission to store personal property on its premises" as opposed to granting him a possessory interest in the Bourke Property. Under Michigan law, "[a] lease gives the tenant the possession of the property leased and exclusive use or occupation of it for all purposes not prohibited by the terms of the lease." *Boyd v. Chrysler*, No. 349307, 2020 WL 3397400, at *4 (Mich. Ct. App. June 18, 2020) (citation omitted). If a valid lease exists, its terms will define the nature of the possessory interest granted to Dockery.

Dockery has presented evidence that, if believed, could show that he had a possessory interest in the Bourke Property to establish standing to pursue his Fourth Amendment claim arising out of the padlocking of that property. Bryant's objection that

6

there are no, and cannot be any, genuine issues of material fact as to whether Dockery has standing is overruled.

**B.    Bryant's Qualified Immunity Relating to the Padlocking Claim (Defendant's Objection #2)**

In her summary judgment motion, Bryant argued that she is entitled to qualified immunity because at the time the Bourke Property was padlocked it was not clearly established "(1) that a three day padlocking of a fenced area connected to a City building constitutes a seizure; (2) that Ms. Bryant must know the exact property line before padlocking the area; and (3) that a padlocking of a property constitutes a seizure of personal property stored purportedly owned by a non-tenant squatter who store[s] items at the location." (ECF No. 77, PageID.958). The Magistrate Judge determined that Bryant defined the rights at issue too narrowly, and when the relevant caselaw is read more broadly, a genuine issue of material fact exists as to whether a reasonable officer with Bryant's knowledge could have believed her actions in padlocking the Bourke Property were lawful.

Bryant objects that the Magistrate Judge erred when he concluded that "there is a question of fact as to whether Bryant was required to take steps to ascertain where the boundary lines were between the two properties and make certain to ensure that she did not inadvertently interfere with property rights beyond the Dexter Property." (ECF No. 88, PageID. 1357.) Bryant argues that as a governmental official, she is entitled to qualified immunity if she made a reasonable mistake of fact or law as to the location of the property line. Further, she maintains that even if she had knowledge that some portion of the enclosed area was owned by a third-party, she did not have the necessary information to

determine the exact location of the property line, nor was there a clearly established obligation for her to do so.

Contrary to Bryant's objection, the Magistrate Judge did not purport to identify a clearly established constitutional right requiring Defendant to determine the exact property boundary subject to the eviction writ and to not enter or seize any property beyond that boundary. Rather, the Magistrate Judge interpreted caselaw to support the proposition that where a governmental official has the necessary information and opportunity to resolve any questions about the propriety of an action, they will not be afforded qualified immunity for judgmental errors resulting from the failure to resolve such questions prior to moving forward. *See*, *Thomas v. Cohen*, 304 F.3d 563, 581 (6th Cir. 2002). (ECF No. 88, PageID.1359.) Here, Dockery presented evidence that Bryant was informed that the Dexter and Bourke Properties were adjacent, and that Mr. Algalham owned the Bourke Property. Nevertheless, a padlock was placed on the gate at the Bourke Property even though Bryant had reason to know the property was not owned by Dockery and therefore not subject to the writ of execution.

Given the evidence as to Bryant's knowledge, any mistake made by Bryant as to the location of the property line at time of the padlocking of the Bourke Property was not reasonable as a matter of law. Bryant's objection based on qualified immunity is overruled.

**C.** **Evidence that Bryant Seized or Instructed Anyone to Seize Items (Defendant's Objection #3)**

To demonstrate liability under § 1983, a plaintiff must clearly show that the defendant was personally involved in the activity that forms the basis of the complaint. *See, Rizzo v. Goode*, 423 U.S. 362, 377 (1976); Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). The Magistrate Judge found that Dockery presented sufficient evidence

to raise a question of fact as to Bryant's personal involvement in the seizure and removal of Dockery's possessions from the Bourke Property. Bryant objects that none of the evidence supports the conclusion that Bryant seized items or instructed others to do so.

According to Bryant, Dockery proffers an internal e-mail in which Bryant wrote that the "[Detroit Building Authority] did request assistance from GSD to secure the building," that the City had hauled away a "big HVAC unit" but that "we did return it," and that "it was not our intention to convey that items could be removed from the property." (ECF No. 85-5, PageID.1233.) Bryant argues the Magistrate Judge misconstrues this email, which was written after the filing of the lawsuit and sought to communicate it was not the Detroit Building Authority's intent to communicate that items could be removed from the property. However, the email can plausibly be read to support the conclusion that Bryant acknowledges her involvement in the decision-making regarding Dockery's personal property.

Second, Bryant refers to the Magistrate Judge's description of photographs purportedly showing Bryant at the padlocking on June 29 and later that same day when the City trucks were loaded up with Dockery's property. Bryant objects that these photographs do not equate to her instructing the seizure of items. However, the photographs show Bryant at the scene and are given further context by Bryant's admission that she directed the padlocking to occur, and that she also made the decision for the padlocks to be removed when she realized there was an issue. (ECF No. 85-4, PageID.1222-1223.)

9

Bryant's objections go to the interpretation of the evidence, but do not undermine the Magistrate Judge's determination that a reasonable jury could find Bryant's direction to lock the property, her presence during the removal of Dockery's possessions, and her decision-making authority constituted active participation in the seizure. Bryant's objections are overruled.

### D.       Qualified Immunity for Seizure Claim Where No Evidence of Intentional Misconduct (Defendant's Objection #4)

To overcome qualified immunity, the plaintiff must demonstrate the defendant "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or [] he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). Dockery's theory of liability is that Bryant knowingly acquiesced in the removal of his personal property by failing to stop her agents from removing property despite her receipt of prior information and warnings from the property owner. Dockery does not allege intentional misconduct. The Magistrate Judge concluded there is a genuine issue of material fact as to Bryant's personal involvement in the removal of Dockery's personal property such that she is not entitled to qualified immunity:

> At a minimum, questions of fact exist as to whether Bryant encouraged, authorized, approved, and/or acquiesced in the removal of Dockery's personal property from the Bourke Property, and thus Bryant is not shielded by qualified immunity. *See Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 790 (6th Cir. 2012) (official not entitled to qualified immunity even though he "was not actively involved in the incidents" at issue); *Venema v. West*, 133 F.4th 625, 632-37 (6th Cir. 2025) (denying qualified immunity where plaintiff sufficiently pled that defendant supervisor knowingly acquiesced in unconstitutional conduct).

ECF No. 88, PageID.1366-1367 (fn. 14).

10

Bryant objects to the Report and Recommendation on the ground that she is entitled to qualified immunity because she could not reasonably have known her actions would violate Dockery's constitutional rights and there is no evidence she engaged in intentional misconduct. As discussed throughout the Report and Recommendation and this order, there is sufficient evidence to establish a question of fact whether Bryant was physically present for the removal of Dockery's property and whether she was aware that his personal property was lawfully stored on the Bourke Property which was not subject to the writ of eviction.

Bryant's objection is overruled.

### E. Evidence Supporting Dockery's Ownership of Items Allegedly Seized (Defendant's Objection #5)

As argued in her summary judgment motion, Bryant again objects that Dockery has failed to produce proof of ownership of any of the items he claims were seized from him. To the contrary, Dockery produced lists of items he claimed were taken from the Bourke Property, as well as his testimony about and photographs of such items. He contends that much of the paperwork showing proof of ownership was stored in his office on the Dexter Property, which was destroyed when the City took possession of that property. While acknowledging that Dockery's evidence is "thin," the Magistrate Judge found it was sufficient to establish a genuine issue of material fact as to whether the items seized and removed from the Bourke Property were his. The Court agrees with the Magistrate Judge's conclusion that Dockery presented sufficient evidence to survive summary judgment.

Bryant's objection is overruled.

**IV.     Conclusion**

For the foregoing reasons, Defendant's objections (ECF No. 91) to the Report and

Recommendation (ECF No. 88) are OVERRULED. The Court ACCEPTS and ADOPTS

the Magistrate Judge's Report and Recommendation on Defendant's motion for summary

judgment (ECF No. 77). Defendant's motion for summary judgment is DENIED.

SO ORDERED.

s/ Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: March 30, 2026

I hereby certify that a copy of the foregoing document was served upon counsel of record
on March 30, 2026, by electronic and/or ordinary mail.

s/ Marlena Williams
Case Manager